**Michael Porter, P.C.**, OSB No. 003560
mike.porter@millernash.com
**Erin M. Burris**, OSB No. 155379
erin.burris@millernash.com
MILLER NASH LLP
US Bancorp Tower
111 SW Fifth Ave, Ste 3400
Portland, OR  97204
Telephone:  503.224.5858
Facsimile:  503.224.0155

      Attorneys for Defendants Oregon State
      University, Board of Trustees of Oregon
      State University, Kim Kirkland, Carol Millie,
      Rebecca Johnson, and Edward Feser

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DIVISION

JOHN DOE,

               Plaintiff,

    v.

OREGON STATE UNIVERSITY, BOARD
OF TRUSTEES OF OREGON STATE
UNIVERSITY, KIMBERLY KIRKLAND, in
her individual and official capacity, CAROL
MILLIE, in her individual and official
capacity, BEVERLY RUSSELL, in her
individual and official capacity, REBECCA
JOHNSON, in her individual and official
capacity, and EDWARD FESER, in his
individual and official capacity,

               Defendants.

Case No. 6:21-cv-01541-MC

OREGON STATE UNIVERSITY
DEFENDANTS' MOTION TO DISMISS

**ORAL ARGUMENT REQUESTED**

Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................. 2

II.   FACTUAL BACKGROUND FOR PURPOSES OF THIS MOTION ........................... 3

III.  ARGUMENT ....................................................................... 4

    A.    Plaintiff's Title IX Claims Should Be Dismissed (First and Second Causes of Action) ................................................................... 7

        1.    The Ninth Circuit's approach to Title IX cases concerning responding-party claims about higher education disciplinary proceedings .......................................................... 7

        2.    Plaintiff's Title IX claims against Kirkland, Johnson, and Feser should be dismissed ................................................... 11

        3.    Plaintiff's Title IX claim based on "Gender Bias" against OSU should be dismissed (Second Cause of Action) ...................... 11

            a.    Legal standards concerning plaintiff's gender bias theory of Title IX under Schwake and Regents............................ 12

            b.    Plaintiff's gender bias theory of Title IX does not state a claim................................................................. 17

                (1)    Plaintiff failed to allege sufficient background indicia of sex discrimination............................ 17

                (2)    Plaintiff's allegations about his disciplinary proceeding do not suggest bias based on sex.................. 19

    B.    Plaintiff's Section 1983 Procedural Due Process Claim Should Be Dismissed (Third Cause of Action) .................................... 22

        1.    OSU is entitled to Eleventh Amendment immunity ............................... 23

        2.    The Section 1983 claim against the OSU Individual Defendants fails as a matter of law .......................................... 24

            a.    The OSU Individual Defendants are entitled to sovereign immunity to the extent the alleged liability is based on actions conducted in their official capacities ............................. 24

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

# TABLE OF CONTENTS
## (continued)

Page

b.    The due process claim asserted against the OSU Individual Defendants in their individual capacities fails ............................ 24

(1)    Plaintiff's allegations do not state a plausible procedural due process claim against any OSU Individual Defendant ........................................................ 25

(2)    The OSU Individual Defendants are nevertheless entitled to qualified immunity.......................................... 26

(A)    Plaintiff does not allege a clearly established right ...................................................................... 27

(B)    Plaintiff does not allege knowingly unlawful conduct ................................................................ 30

C.    Plaintiff's Breach of Contract Claim Should Be Dismissed (Fourth Cause of Action) ......................................................................................... 30

1.    Plaintiff fails to properly plead the existence of a contract .................... 31

2.    Plaintiff fails to allege a plausible breach of the alleged contract .......... 35

IV.    CONCLUSION.............................................................................................. 38

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Anderson v. Creighton,*
483 US 635, 107 S Ct 3034, 97 L Ed 2d 523 (1987)............27

*Andrews v. Treasure Valley Community Coll.,*
No. 2:19-cv-01314-SU, 2020 WL 1678050 (D Or Mar. 18, 2020)..........28

*Ashcroft v. al-Kidd,*
563 US 731, 131 S Ct 2074, 179 L Ed 2d 1149 (2011)..........26, 27, 29, 30

*Ashcroft v. Iqbal,*
556 US 662, 129 S Ct 1937, 173 L Ed 2d 868 (2009)............5

*Austin v. Univ. of Or.,*
205 F Supp 3d 1214 (D Or 2016), *aff'd*, 925 F3d 1133............28

*Austin v. Univ. of Or.,*
925 F3d 1133 (9th Cir 2019) ............8, 9

*Barren v. Harrington,*
152 F3d 1193 (9th Cir 1998) ............25

*Bell Atl. Corp. v. Twombly,*
550 US 544, 127 S Ct 1955, 167 L Ed 2d 929 (2007)............5

*Bird v. Lewis & Clark Coll.,*
104 F Supp 2d 1271 (D Or 2000) ............31

*Brady v. Portland State Univ.,*
No 3:18-cv-01251-HZ, 2019 WL 1460870 (D Or Apr. 1, 2019) ............11

*Brainard v. Western Or. Univ.,*
2017 WL 1534191 (D Or Apr. 26, 2017) ............23

*Cannon v. Univ. of Chicago,*
441 US 677, 99 S Ct 1946, 60 L Ed 2d 560 (1979)............7

*Chappell v. Mandeville,*
706 F3d 1052 (9th Cir 2013) ............26

*G.C. ex rel. Counts v. North Clackamas Sch. Dist.,*
654 F Supp 2d 1226 (D Or 2009) ............11

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

*Dauven v. George Fox Univ.*,
    2010 WL 6089077 (D Or 2010)..................................................................................32

*Dist. of Columbia v. Wesby*,
    __ US __, 138 S Ct 577, 199 L Ed 2d 453 (2018).................................................27

*Doe v. Columbia Coll. Chicago*,
    933 F3d 849 (7th Cir 2019) ...............................................................................10, 34

*Doe v. Purdue University*,
    928 F3d 652, 669 (7th Cir 2019) .......................................................................21, 22

*Doe v. Regents of the Univ. of Calif.*
    __ F4th __, 2022 WL 98135, at *1-2 (9th Cir Jan. 11, 2022)........................ *passim*

*Doe v. Samford Univ.*,
    No. 2:21-cv-00871-ACA, 2021 WL 3617702 (ND Ala Aug. 15, 2021) ................................19

*Doe v. Univ. of Or.*,
    No. 6:17-cv-01103-AA, 2018 WL 1474531 (D Or Mar. 26, 2018) ..........................27, 33, 34

*Doe v. White*,
    859 Fed App'x 76 (9th Cir June 1, 2021) (unpublished)..........................................29

*Dr. Eric Natkin, DO PC v. Am. Osteopathic Ass'n*,
    No. 3:16-cv-01494-SB, 2017 WL 9049880 (D Or Aug. 30, 2017)........................................32

*Fitzgerald v. Barnstable Sch. Comm.*,
    555 US 246, 129 S Ct 788, 172 L Ed 2d 582 (2009).............................................11

*Gallagher v. Capella Educ. Co.*,
    No. 3:19-cv-01342-JR, 2019 WL 8333532 (D Or Dec. 23, 2019), *adopted by*
    2020 WL 1550729 (D Or Apr. 1, 2020), *aff'd* 2021 WL 6067015 (9th Cir
    2021) ...............................................................................................................31, 34

*Gibson v. Walden Univ., LLC*,
    66 F Supp 3d 1322 (D Or 2014) ........................................................................31, 32

*Gililland v. Southwestern Or. Community Coll. Dist. ex rel Bd. of Educ.*,
    6:19-cv-00283-MK, 2021 WL 5760848 (D Or Dec. 3, 2021)................................11

*Hafer v. Melo*,
    502 US 21, 112 S Ct 358, 116 L Ed 2d 301 (1991)..............................................24

*Hagel v. Portland State Univ.*,
    237 Fed App'x 146 (9th Cir 2007) ......................................................................23

Page iv -   Table of Authorities

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

*Harlow v. Fitzgerald,*
    457 US 800, 102 S Ct 2727, 73 L Ed 2d 396 (1982)........................................26, 27

*Klamath Off-Project Water Users, Inc. v. Pacificorp,*
    237 Or App 434, 240 P3d 94 (2010)..................................................................37

*Krainski v. Nevada ex rel. Bd. of Regents of Nevada System of Higher Educ.,*
    616 F3d 963 (9th Cir 2010) .............................................................................29

*Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.,*
    526 US 629, 119 S Ct 1661, 143 L Ed 2d 839 (1999)...........................................8

*Liu v. Portland State Univ.,*
    No. 3:14-CV-00908-BR, 2016 WL 1228580 (D Or Mar. 28, 2016) .....................23

*Malley v. Briggs,*
    475 US 335, 106 S Ct 1092, 89 L Ed 2d 271 (1986)...........................................27

*Marder v. Lopez,*
    450 F3d 445 (9th Cir 2006) .............................................................................32

*Paul v. Davis,*
    424 US 693, 96 S Ct 1155, 47 L Ed 2d 405 (1976)............................................28

*Pranger v. Or. State Univ.,*
    3:21-cv-0656-HZ, 2022 WL 214629 (D Or Jan. 25, 2022) .................................33

*Real Estate Loan Fund Or. Ltd. v. Hevner,*
    76 Or App 349, 709 P2d 727 (1985)..................................................................31

*Rizzo v. Goode,*
    423 US 362, 96 S Ct 598, 46 L Ed 2d 561 (1976)..........................................25, 26

*Ross v. Creighton Univ.,*
    957 F2d 410 (7th Cir 1992) .............................................................................34

*Rossley v. Drake Univ.,*
    979 F3d 1184 (8th Cir 2020) ...........................................................................18

*Schwake v. Arizona Bd. of Regents,*
    967 F3d 940 (9th Cir 2020) .................................................................... *passim*

*Shanks v. Dressel,*
    540 F3d 1082 (9th Cir 2008) ......................................................................23, 28

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

*Slover v. Or. State Bd. of Clinical Soc. Workers*,
 144 Or App 565, 927 P2d 1098 (1996)..................................................................31

*Tsao v. Desert Palace, Inc.*,
 698 F3d 1128 (9th Cir 2012) ................................................................................22

*Tuuamalemalo v. Greene*,
 946 F3d 471 (9th Cir 2019) ..................................................................................27

*Ulrich v. City and Cnty. of San Francisco*,
 308 F3d 968 (9th Cir 2002) ..................................................................................28

*Wenger v. Monroe*,
 282 F3d 1068 (9th Cir 2002) ................................................................................28

*Wieck v. Hostetter*,
 274 Or App 457, 362 P3d 254 (2015)..............................................................31, 34

*Will v. Mich. Dep't of State Police*,
 491 US 58, 109 S Ct 2304, 105 L Ed 2d 45 (1989)..........................................23, 24

*Yusuf v. Vassar Coll.*,
 35 F3d 709 (2d Cir 1994)...............................................................................7, 8, 9

**Statutes**

20 USC § 1681 ...............................................................................................5, 7

42 USC § 1983 ...................................................................................... *passim*

**Other Authorities**

34 CFR §§ 106.1, *et seq.* (2020) .........................................................................34

Eleventh Amendment...............................................................................2, 6, 23, 38

Fourteenth Amendment .................................................................................2, 6, 22

Fed R Civ P 8(a)(2)..................................................................................................5

Fed R Civ P 12(b)(6)...........................................................................1, 2, 5, 32

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

## LOCAL RULE 7-1 CERTIFICATION

Counsel for Oregon State University ("OSU"), Board of Trustees of OSU,[1]

Kim Kirkland, Carol Millie, Rebecca Johnson, and Edward Feser (the individuals are hereinafter

referred to collectively as the "OSU Individual Defendants," and collectively, all of the

foregoing defendants are hereinafter referred to as the "OSU Defendants"), conferred in good

faith with counsel for plaintiff about their position by telephone on December 21, 2021, but the

parties have been unable to resolve the dispute.

## LOCAL RULE 7-2 CERTIFICATION

This brief complies with the applicable word-count limitation under LR 7-2(b)

because it contains 10,602 words, including headings, footnotes, and quotations, but excluding

the caption, table of contents, table of cases and authorities, signature block, exhibits, and any

certificates of counsel.

## MOTION

In accordance with Fed R Civ P 12(b)(6), the OSU Defendants move to dismiss

all claims because the Complaint fails to state any claim against them upon which relief can be

granted.

---

[1] Plaintiff asserts some claims against the OSU Board of Trustees. OSU's Board is the governing body of the entity OSU and not a separate entity that can be sued. *See* ORS 352.054 (establishing Board of Trustees as governing board of public universities). The OSU Defendants refer only to OSU concerning claims asserted against OSU and the OSU Board.

Page 1    Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

**MEMORANDUM IN SUPPORT**

## I.     INTRODUCTION

It is clear from plaintiff's Complaint that he is trying to utilize the court system to second-guess OSU's disciplinary action in response to finding plaintiff responsible for nonconsensual sexual misconduct. While there are occasions when an institution of higher education can be liable for a disciplinary decision because the institution engaged in gender discrimination, plaintiff's case does not reflect such circumstances. Instead, plaintiff relies heavily on the unremarkable proposition that such institutions have been encouraged to ensure that they take accusations of sexual misconduct seriously to suggest that one can infer gender discrimination motivated his disciplinary process. This broad concept and conclusory allegations without plausible supporting facts show that plaintiff's claim for gender discrimination under Title IX of the Education Amendments of 1972 ("Title IX") cannot continue. Plaintiff's Title IX claims should be dismissed under Fed R Civ P 12(b)(6). Plaintiff's other claims face a similar fate. Plaintiff's Fourteenth Amendment procedural due process claim under 42 USC § 1983 ("Section 1983") against OSU fails because it is entitled to immunity under the Eleventh Amendment, and his allegations against the OSU Individual Defendants fall far short of requirements necessary to state claims against them. Finally, plaintiff does not plead a cognizable breach-of-contract claim because he did not allege the basic requirements of contract formation or a plausible breach of its obligations.

In short, if plaintiff states a claim, it is hard to see how any disciplinary action at an institution of higher education would not ultimately become a game of second-guessing through the court system. That is not what the court system is designed for, and that is why

Page 2 -   Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

claims should be dismissed when a plaintiff fails to state sufficient allegations showing a plausible entitlement to relief. Plaintiff's claims under Title IX, Section 1983, and state-law breach-of-contract do not plausibly suggest such an entitlement. This Court should dismiss plaintiff's Complaint.

## II.    FACTUAL BACKGROUND FOR PURPOSES OF THIS MOTION

Plaintiff alleges the following in his Complaint:[2] OSU is a public research university, with its main campus in Corvallis, Oregon. Compl. ¶ 8.

OSU employs the OSU Individual Defendants as follows:

- Rebecca Johnson, Interim President;

- Edward Feser, Provost & Executive Vice President;

- Kim Kirkland, Executive Director of Equal Opportunity & Access ("EOA"), and Title IX Coordinator; and

- Carol Millie, Assistant Dean of Students-Director of Student Conduct and Community Standards. *See* Compl. ¶¶ 9-10, 12-13.

Plaintiff "John Doe" was a student of OSU at the time of the events giving rise to this lawsuit. Plaintiff served as the volunteer manager of a women's athletic team. Compl. ¶ 29. A female student, "Jane Roe," was an athlete on the athletic team. Compl. ¶ 85.

On July 12, 2019, plaintiff and Roe spent time together and with other individuals on Roe's women's athletic team at a party. Compl. ¶¶ 89-90. Between 12:30 and 1 a.m., Roe's roommate invited plaintiff to Roe's home. Compl. ¶ 98. Plaintiff and Roe engaged in sexual

---

[2] The OSU Defendants set forth the following facts from plaintiff's Complaint for purposes of this motion only. The OSU Defendants do not admit to the truthfulness of any allegation, and reserve the right to contest or deny plaintiff's allegations in the future.

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

intercourse. Compl. ¶ 108. Roe stated that she was too intoxicated to remember whether she had sexual intercourse with plaintiff that night. Compl. ¶ 179.

On February 11, 2020, EOA notified plaintiff that Roe had submitted a complaint concerning the July 2019 encounter, which alleged that plaintiff violated the Code of Student Conduct by engaging in Unlawful Behavior, Non-Consensual Sexual Contact, Non-Consensual Sexual Intercourse, and Non-Consensual Sexual Activity. Compl. ¶ 157-61.

OSU retained an outside investigator, Beverly Russell, to conduct a thorough and impartial fact finding concerning Roe's allegations. Compl. ¶ 162. Russell interviewed several witnesses, including witnesses plaintiff proposed. Compl. ¶¶ 175, 178. Russell also interviewed plaintiff. Compl. ¶ 173. OSU provided an investigation report containing factual findings to plaintiff for his response, and he submitted a response. Compl. ¶¶ 183-84.

On October 2, 2020, Millie notified plaintiff that he had been found responsible for Non-Consensual Sexual Contact, Non-Consensual Sexual Intercourse, and Non-Consensual Sexual Activity (hereinafter "nonconsensual sexual interactions"), and imposed a two-year suspension. Compl. ¶¶ 189-90. Plaintiff appealed the decision, which was denied. Compl. ¶¶ 192, 195.

Plaintiff's lawsuit followed.

## III.    ARGUMENT

Plaintiff asserts four claims against the OSU Defendants arising out of OSU's Title IX investigation and finding that plaintiff engaged in nonconsensual sexual interactions with another student. None of plaintiff's claims state a claim upon which relief can be granted, and they should be dismissed as a matter of law.

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

To sufficiently state a claim, Fed R Civ P 8(a)(2) requires that a complaint "contain * * * a short and plain statement of the claim showing that the pleader is entitled to relief." Under Fed R Civ P 12(b)(6), courts should dismiss claims when plaintiff's factual allegations, accepted as true, fail to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 US 662, 678, 129 S Ct 1937, 173 L Ed 2d 868 (2009) (internal punctuation and citation omitted). To avoid dismissal under Rule 12(b)(6), a plaintiff must allege sufficient facts to provide "fair notice" of the claim the plaintiff is asserting and "the grounds upon which [the claim] rests." *Bell Atl. Corp. v. Twombly*, 550 US 544, 555 n.3, 127 S Ct 1955, 167 L Ed 2d 929 (2007) (internal punctuation and citation omitted).

To evaluate whether a plaintiff has stated a plausible claim for relief, courts should begin by distinguishing between "mere conclusory statements" and factual allegations, as conclusory statements are "not entitled to the assumption of truth." *Iqbal*, 556 US at 678-79, 681. Next, courts should consider whether "the factual allegations in [the] complaint * * * plausibly suggest an entitlement to relief." *Id.* at 681. A pleading that sets forth only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not [suffice]." *Twombly*, 550 US at 555. If the factual allegations "have not nudged [the] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 547.

Here, plaintiff asserts four claims for relief. Each claim should be dismissed for the following reasons, as well as the additional reasons raised in this memorandum:

- **Plaintiff's 20 USC § 1681 Title IX claims based on "erroneous outcome" and "gender bias" (First and Second Causes of Action):** The Ninth Circuit's recent Title IX cases challenging disciplinary proceedings dispose of doctrinal tests like

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

"erroneous outcome" and "selective enforcement," and instead require a plaintiff to allege specific facts that plausibly raise an inference that gender bias motivated the disciplinary proceeding. As a result, plaintiff's "erroneous outcome" claim (which has no allegations reflecting gender bias) should be dismissed.[3] Moreover, plaintiff's Title IX claim for gender bias does not plausibly raise an inference that the OSU Defendants discriminated against plaintiff on the basis of his sex concerning the disciplinary proceeding.

- **Plaintiff's Section 1983 Fourteenth Amendment Procedural Due Process claim (Third Cause of Action):** Plaintiff's claim against OSU must be dismissed because Eleventh Amendment sovereign immunity bars liability. This claim should also be dismissed as to the OSU Individual Defendants because (1) plaintiff fails to allege sufficient personal involvement of any individual, and (2) they are entitled to qualified immunity as a matter of law.

- **Plaintiff's breach of contract claim (Fourth Cause of Action):** Plaintiff's breach-of-contract claim fails because he does not allege facts reflecting the existence of a contract or any breach of its terms.

---

[3] In effect, the "erroneous outcome" claim is subsumed within his second claim for "gender bias."

Page 6 -    Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

**A.    Plaintiff's Title IX Claims Should Be Dismissed (First and Second Causes of Action).**

    **1.    The Ninth Circuit's approach to Title IX cases concerning responding-party claims about higher education disciplinary proceedings.**

The Ninth Circuit's approach to plaintiff's Title IX claims has changed in recent years. Some background about Title IX cases in university disciplinary proceedings provides context for the Ninth Circuit's requirement that a complaint have specific allegations of gender bias against the plaintiff to state a claim.

Congress enacted Title IX in 1972. It states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 USC § 1681(a).

Title IX was enacted to supplement the Civil Rights Act of 1964's prohibition on discrimination in education institutions. *Yusuf v. Vassar Coll.*, 35 F3d 709, 714 (2d Cir 1994) (citations omitted). Although Title IX does not expressly provide a private right of action, in considering a claim of intentional gender discrimination in a university admissions process, the Supreme Court found that Title IX is enforceable through an implied right of action for discrimination. *Cannon v. Univ. of Chicago*, 441 US 677, 703, 709, 99 S Ct 1946, 60 L Ed 2d 560 (1979).

Title IX "encompass[es] diverse forms of intentional sex discrimination." *Schwake v. Arizona Bd. of Regents*, 967 F3d 940, 946 (9th Cir 2020) (internal punctuation and citation omitted). In 1999, the Supreme Court ruled that educational institutions could be held responsible for student-on-student sexual misconduct or harassment in certain contexts, and

Page 7 -   Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

persons subjected to that harassment can bring claims against their school under Title IX. *See Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 US 629, 650-52, 119 S Ct 1661, 143 L Ed 2d 839 (1999). Thus, Title IX requires institutions to take action when they know of allegations of sexual harassment. In the context of university discipline proceedings for alleged sexual misconduct, Title IX also protects responding parties from discrimination; Title IX "bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Yusuf*, 35 F3d at 715.

In an early appellate case that developed a legal framework for litigants in those circumstances, the Second Circuit examined whether "gender [was] a motivating factor in the decision to discipline" a Vassar College student accused of sexual harassment. *Yusuf*, 35 F3d at 712-13, 715. There, Yusuf alleged that his roommate attacked him, and that in retaliation for this, the roommate's girlfriend brought an allegedly false sexual harassment complaint against Yusuf. *Id.* at 712. The disciplinary hearing panel found Yusuf responsible for harassment and Vassar suspended him; Yusuf sued under Title IX, alleging that Vassar discriminated against him based on his gender during those proceedings. *Id.* at 713. Vassar moved to dismiss the Title IX claim and the court set forth certain doctrinal tests for litigants asserting liability based on their disciplinary proceeding that persisted in courts for years. *Id.* at 715.

As recently as 2019, the Ninth Circuit acknowledged the traditional doctrinal tests for responding-party litigation, which are: (1) erroneous outcome of the disciplinary proceeding, (2) selective enforcement of policies or sanctions, and (3) that the institution acted with deliberate indifference to known gender discrimination. *Austin v. Univ. of Or.*, 925 F3d 1133, 1138 (9th Cir 2019).

Page 8 -    Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

In an erroneous outcome claim, the plaintiff must "allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding" and "allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Yusuf*, 35 F3d at 715. A "lack of a particularized allegation relating to a causal connection between the flawed outcome and gender bias" proves fatal to such a claim. *Id.*

In a selective enforcement claim, a plaintiff asserts that, "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Id.* In *Austin*, the Ninth Circuit held that in part, plaintiffs' claim failed because they had not even claimed that "any female University students have been accused of comparable misconduct." *See* 925 F3d at 1138. Similarly, plaintiffs' allegations about certain campus events that allegedly pressured the university to discipline the plaintiffs—campus protests and a university president's speech—did not support a Title IX claim because plaintiffs failed to "make any plausible link connecting [those] events and the University's disciplinary actions to the fact that the [plaintiffs were] male." *Id.*

Despite the particular doctrinal test pleaded, the critical commonality among those Title IX theories is that, to survive a motion to dismiss, plaintiffs must allege "sufficient, nonconclusory allegations *plausibly linking the disciplinary action to discrimination on the basis of sex*." *Austin*, 925 F3d at 1138 (emphasis added).

Based on the principle that the allegations must show sex discrimination, the Ninth Circuit recently simplified its approach to respondents' Title IX cases. Rather than plead a specific doctrinal theory, the Ninth Circuit decided in *Schwake v. Arizona Board of Regents* that

Page 9 -    Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

a court should evaluate "whether 'the alleged facts, if true, raise a plausible inference that the university discriminated [against the plaintiff] on the basis of sex?'" 967 F3d at 947 (quoting *Doe v. Columbia Coll. Chicago*, 933 F3d 849, 854-55 (7th Cir 2019)). A Title IX plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Schwake*, 967 F3d at 947 (citations omitted). The Ninth Circuit reaffirmed this approach in *Doe v. Regents of the Univ. of Calif.* ("*Regents*"). *See* ___ F4th ___, 2022 WL 98135, at *1-2 (9th Cir Jan. 11, 2022). In *Regents*, the Ninth Circuit made clear that the doctrinal tests (erroneous outcome and selective enforcement), are not necessary to analyze Title IX liability in responding-party cases; there, although the lower court had decided the case based on the plaintiff's alleged doctrinal tests, the Ninth Circuit disregarded that approach and applied only *Schwake*'s simplified framework. *See* 2022 WL 98135, at *2, 5-10. In both cases, the plaintiffs pleaded specific facts raising an inference of gender bias, which, as discussed below, plaintiff's Complaint lacks. *See Schwake*, 967 F3d at 944-45, 948-51 (inferring gender bias based on allegations of external pressure, an internal pattern of bias, a professor gossiping about the plaintiff's private disciplinary matter, an administrator dissuading the plaintiff from using the complaint process, and a "one-sided investigation" against the plaintiff); *and see Regents*, 2022 WL 98135, at *2, 6-10 (inferring gender bias based on allegations of external pressure from the state legislature's audit, an internal pattern of bias, a Title IX employee and administrator's gender-based statements directly to the plaintiff, and significant procedural irregularities in that plaintiff's case).

Here, plaintiff asserted two Title IX claims: one for "erroneous outcome," and the other based on *Schwake*'s standard for "gender bias." This Court should disregard the erroneous outcome theory and analyze only the sufficiency of the gender bias theory, consistent with the

Page 10 -  Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

Ninth Circuit's approach. Plaintiff did not plead facts showing that gender bias motivated his disciplinary proceeding.

>    **2.    Plaintiff's Title IX claims against Kirkland, Johnson, and Feser should be dismissed.**

As an initial matter, plaintiff's Title IX claims against three individuals (Kirkland, Johnson, and Feser) fail as a matter of law. Title IX claims are only proper against institutions, not individuals. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 US 246, 257, 129 S Ct 788, 796, 172 L Ed 2d 582 (2009). That is because "only recipients of Federal funding may be liable under Title IX." *Brady v. Portland State Univ.*, No 3:18-cv-01251-HZ, 2019 WL 1460870, at *5 (D Or Apr. 1, 2019). Courts in this district have consistently held that "individuals are not subject to liability under Title IX." *G.C. ex rel. Counts v. North Clackamas Sch. Dist.*, 654 F Supp 2d 1226, 1237 (D Or 2009) (citing various circuits that have rejected Title IX liability for individuals); *and see Gililland v. Southwestern Or. Community Coll. Dist. ex rel Bd. of Educ.*, 6:19-cv-00283-MK, 2021 WL 5760848, at *7 (D Or Dec. 3, 2021) (the plaintiff's "Title IX claims against the individual school officials fail as a matter of law").

Plaintiff's Title IX claims against Kirkland, Johnson, and Feser, fail as a matter of law because they are individuals, not institutions in receipt of federal funding.

>    **3.    Plaintiff's Title IX claim based on "Gender Bias" against OSU should be dismissed (Second Cause of Action).**

Plaintiff's factual allegations do not plausibly allege a Title IX claim under the Ninth Circuit's new framework. The *Schwake* and *Regents* plaintiffs alleged significantly more detailed facts suggesting gender bias specifically against them than plaintiff alleged in his Complaint. Whereas those plaintiffs alleged salacious facts reflecting a university professor gossiping about the private details of the plaintiff's disciplinary matter to students, an

Page 11 -  Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

administrator or Title IX office employee making overtly gender-based comments to the plaintiff during his proceeding, an administrator dissuading the plaintiff from using the university's complaint process, and voluminous procedural irregularities, here, plaintiff's allegations reflect only routine frustrations with the investigation and its outcome against him, and do not come close to suggesting gender bias against him.

>  a.  **Legal standards concerning plaintiff's gender bias theory of Title IX under *Schwake* and *Regents*.**

In *Schwake*, the Ninth Circuit indicated that the doctrinal tests are unnecessary in Title IX pleading because "at bottom," such tests ask the same question, whether plaintiff has plead sufficient facts that, "if true, raise a plausible inference that the university discriminated [against the plaintiff] on the basis of sex[.]" 967 F3d at 947 (internal punctuation and citation omitted). The test is not easier to satisfy; it merely offers "simpler" analysis. *Id.* A plaintiff satisfies that test by pleading specific and sufficient allegations of: (1) "background indicia of sex discrimination" at the institution; and (2) "facts particular to [the plaintiff's disciplinary] case." *Id.* at 948-49 (citation omitted).

In *Schwake*, the court examined a male plaintiff's Arizona State University ("ASU") disciplinary proceedings following a female student's complaint of sexual misconduct against Schwake. *Id.* at 943-44. ASU investigated, found Schwake responsible for the conduct, and suspended him for three years. *Id.* at 944-45.

As to background indicia of sex discrimination, the court found the following allegations sufficient: (1) ASU faced pressure in light of a DOE investigation against ASU, (2) ASU had a pattern of gender-based decision-making against male respondents, and (3) that

Page 12 -  Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

Schwake was personally aware of recent ASU disciplinary proceedings against males that were all found responsible for sexual misconduct, regardless of the evidence. *Id.* at 948-49.

As to allegations pertaining to Schwake's particular disciplinary proceeding, the court found that the following allegations supported an inference of bias:

- An ASU professor shared Schwake's confidential disciplinary matter and made him an example to students by "'loudly discuss[ing]'" private information about Schwake's case with a group in his office with the door open, and the professor also discussed the "'graphic details'" of Schwake's case in his class "'as an example of a real-life scenario and asking students how it should be handled,'" despite the fact that Schwake had not yet appealed. *Id.* at 944-45. The court found that these discussions "reflect[ed] an atmosphere of bias against Schwake." *Id.* at 949-50.

- After Schwake appealed, an Associate Dean and Schwake agreed to a reduced sanction, but Schwake still wanted an appeal hearing about the finding against him and the Dean refused; the court found that this raised an inference of bias because foreclosing the appeal arguably reflected ASU's potential bias against Schwake and in favor of women (in general) by allowing ASU to punish Schwake and prevent the potential for further scrutiny into the finding against Schwake through an appeal. *Id.* at 945, 950. Also, Schwake wanted to submit a complaint about the complainant, but the Dean discouraged Schwake (a male) from pursuing his complaint by threatening Schwake with more

Page 13 -  Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

investigation, discipline, and degree revocation; the court found that this was "probative of gender bias." *Id.*

- ASU conducted a "one-sided investigation" in a variety of ways, including by refusing Schwake any written information about the charges against him, not considering his offered witnesses or evidence, finding him responsible for violations that he had not had an opportunity to respond to, and preventing his access to evidence against him. *Id.* at 951. The court found these allegations showed an inference of bias. *Id.*

Based on the "combination of Schwake's allegations of background indicia of sex discrimination along with the allegations concerning his particular disciplinary case," the court found that Schwake asserted sufficient allegations to raise a plausible inference of sex discrimination and stated a claim. *Id.*

The Ninth Circuit reaffirmed *Schwake*'s standards in *Regents*, which was another case with significantly more detailed allegations suggesting bias than plaintiff has alleged. There, a male graduate student brought a Title IX claim against the University of California, Los Angeles ("UCLA") about his disciplinary proceeding and suspension stemming from his former fiancées complaint about his conduct. *See Regents*, *supra* n.1, 2022 WL 98135, at *2.

As to background indicia of sex discrimination, the court found the following allegations, taken together, were sufficient:

- UCLA faced certain "external pressures" from various sources, including DOE guidance concerning handling Title IX complaints, and an audit of

Page 14 -  Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

UCLA's practices by the California Joint Legislature Audit Committee following a student's testimony to the Legislature. *Id.* at *6.

- UCLA had an "internal pattern and practice of bias" because of several allegations, including that certain UCLA leaders had written articles suggesting that UCLA was biased toward complainants, a UCLA Title IX coordinator had made a statement that a UCLA event about "countering toxic masculinity as * * * 'achievement,'" there was an investigation about whether UCLA favored women for scholarships, and the investigator on plaintiff's case had tweeted a statement suggesting a bias in favor of women as it implied that while women are emotionally disciplined, men are not. *Id.* at *7.

- UCLA had an "internal pattern of gender-based decisionmaking [sic] against male respondents," because it chose to pursue complaints against individuals who were "overwhelmingly male" and that UCLA had never suspended a female for the same amount of time, based on similar facts. *Id.*

Based on the *Regents* plaintiff's many allegations concerning the general atmosphere of discrimination, including external pressure and an internal pattern of bias and gender-based decision-making, the court found that those allegations, taken together, sufficiently alleged background indicia of sex discrimination at UCLA. *Id.* at *8.

As to allegations pertaining to the *Regents* plaintiff's particular disciplinary proceeding, the court found that the following allegations supported an inference of bias:

- UCLA's Respondent Coordinator told the plaintiff that "'no female has ever fabricated allegations against an ex-boyfriend in a Title IX setting.'" *Id.* The

Page 15 -  Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

court found this statement suggested that "UCLA's Title IX officials held biased assumptions against male respondents during the course of [the plaintiff's] disciplinary proceeding." *Id.*

- The complainant alleged an incident when she arrived to the plaintiff's office unannounced and demanded to be admitted, and the plaintiff refused. *Id.* at *2. The Associate Dean (the decision-maker in the disciplinary case) advised the plaintiff "that if she were in his shoes, she would have invited [the complainant] into her office during [that incident]." *Id.* at *9. The court found that this statement "at the very least raise[d] the question" of whether the Dean would have said the same "if the gender roles were reversed." *Id.*

- The plaintiff alleged significant "procedural irregularities" in his disciplinary proceeding, including: the burden was placed on the plaintiff; the plaintiff was not allowed to speak at his appeal hearing; some witness testimony was discounted; the Dean falsely stated that a two-year suspension was mandatory; the appeal panel found that the complainant was in fear of "'bodily injury,' not 'serious bodily injury' as required by the policy"; the complainant was not a student at the time of the incident; the complainant lied about her physical injuries; and the Title IX investigator made findings of policy violations that were not included in the notice. *Id.* The court found that "at some point an accumulation of procedural irregularities all disfavoring a male respondent begins to look like a biased proceeding." *Id.*

Page 16 -  Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

Taking the multi-angled allegations together, the court found that in that instance, the plaintiff sufficiently raised an inference that UCLA discriminated against the plaintiff on the basis of sex. *Id.* at *10.

**b.     Plaintiff's gender bias theory of Title IX does not state a claim.**

In light of the Ninth Circuit's rulings in *Schwake* and *Regents*, it is plain that plaintiff's allegations do not raise a plausible inference that OSU discriminated against plaintiff, because he failed to state sufficient (1) background indicia of sex discrimination and (2) facts specific to his own disciplinary proceeding suggesting bias.

(1)     *Plaintiff failed to allege sufficient background indicia of sex discrimination.*

Plaintiff's Complaint includes the following allegations to try to show that OSU has faced pressure to combat sexual misconduct: (1) federal guidance to colleges and universities over the years, such as the 2011 "Dear Colleague Letter"—a guidance document for colleges and universities, (2) the OCR investigated OSU in 2017, (3) OSU revised its Title IX policies and procedures in "apparent response" to certain 2017 OCR guidance, (4) OSU responded to the alleged pressure by finding males responsible and punishing them harshly, and (5) OSU's policies and procedures use allegedly biased terminology. *See generally*, Compl. ¶¶ 30-84.

Plaintiff's allegations do not suggest that OSU had an atmosphere of sex discrimination. Notwithstanding plaintiff's allegations about the DOE's guidance over the years, plaintiff must assert more to meet *Schwake*'s standard for sufficient background indicia of sex discrimination. *See Schwake*, 967 F3d at 948-49; *Regents*, 2022 WL 98135 at *7. Indeed, in those cases, the court found an inference of gender bias on allegations about a specific pattern and practice of bias at the school; if federal guidance alone were sufficient, every single male

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

respondent attending a school subject to Title IX would raise a plausible inference of gender bias

sufficient to state a Title IX claim. That would render the pleading standards meaningless.

        As an initial matter, plaintiff's allegation that OSU revised its Title IX policies

and that they use "biased language" does not create a viable claim. *See* Compl. ¶ 54. For

instance, plaintiff purportedly quotes definitions of various terms, such as "Reporting Party" or

"non-consensual sexual contact," and suggests that OSU's policies providing resources for

"survivors" is somehow inherently biased toward females. *See, e.g.*, Compl. ¶¶ 57, 59, 69. But

the definitions and resources for survivors are gender-neutral, and nothing about those terms or

providing resources suggests gender bias. *See, e.g.*, *Rossley v. Drake Univ.*, 979 F3d 1184, 1194

(8th Cir 2020) (rejecting plaintiff's argument that the university's policies used inherently

gender-biased language that was "victim-centered" and provided resources to "sexual assault

survivors" because the university's policies were gender-neutral). To suggest that male students

cannot be subjected to sexual assault is an inaccurate and outdated reflection of what constitutes

sexual misconduct.

        Furthermore, unlike the *Schwake* and *Regents* plaintiffs who alleged far more

particular facts reflecting their own knowledge of bias specific to their universities, plaintiff

essentially asserts only that OCR investigated OSU for one matter in 2017.[4] For instance,

Schwake alleged that he was aware of other ASU disciplinary proceedings that disfavored males,

---

[4] OCR has investigated hundreds of education institutions based on complaints or compliance
reviews concerning Title IX practices because that is what OCR does. Since such investigations
are relatively common occurrences for institutions, it would not generate the type of pressure that
would cause an institution to engage in discriminatory practices. *See* Pending Cases Currently
Under Investigation at Elementary-Secondary and Post-Secondary Schs. as of Jan. 6, 2022 7:30
am Search, US Dep't of Educ., (*last modified* Jan. 11, 2022), *available at*
https://www2.ed.gov/about/offices/list/ocr/docs/investigations/open-investigations/tix.html.

Page 18 -  Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

*see Schwake*, 967 F3d at 948-49, and the *Regents* plaintiff alleged that UCLA overwhelmingly chose to investigate male respondents and had never suspended a female for as long based on similar circumstances, *see Regents*, 2022 WL 98135, at *7. Plaintiff, for his part, asserts only a vague and conclusory allegations including that his Complaint "will demonstrate" that OSU implemented its policies in a biased manner, and an allegation about a nationwide study that males are more often respondents, but it is not specific to OSU. *See* Compl. ¶¶ 45, 217. A vague allegation that respondents are more often male does not raise gender bias. *See, e.g., Doe v. Samford Univ.*, No. 2:21-cv-00871-ACA, 2021 WL 3617702, at *10 (ND Ala Aug. 15, 2021) (dismissing plaintiff's allegation that "only men were accused of rape" at Samford "indicates nothing about Samford's motivations in how it treat complaints of sexual assault" because "Samford does not control who complains" about what).

Consequently, plaintiff's allegations of pressure are merely conclusory and do not satisfy the Ninth Circuit's standard for specific background indicia of sex discrimination.

(2)    *Plaintiff's allegations about his disciplinary proceeding do not suggest bias based on sex.*

Plaintiff's factual allegations about his disciplinary proceeding fail to suggest bias against males. Plaintiff's allegations can be categorized as follows:

- <u>Facts about the notice of Roe's complaint and investigation process</u>. For example, plaintiff alleged that the investigator should have interviewed certain witnesses, asked specific questions of witnesses, provided him an opportunity to respond to evidence, or provided a "hard copy" of the investigation report. *See* Compl. ¶¶ 231.a., e-j., m.

Page 19 -  Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

- <u>Facts about Roe's alleged "consent[]" and assessing the parties' credibility</u>. For example, plaintiff alleged that the investigator "rejected" information that Roe "consented to sexual intercourse," did not consider Roe's "motivations," and did not account for plaintiff's "spotless record" in assessing the parties' credibility. *See* Compl ¶¶ 231.c., d., k., l.

- <u>Conclusory allegations of biased standards of proof and staff training</u>. Plaintiff alleges in a conclusory fashion that OSU applies different evidentiary admissibility standards for females than males, that the investigator misapplied the "preponderance of the evidence standard," did not afford the plaintiff the presumption of innocence because of its allegedly biased policy language, and that its staff are trained using the allegedly biased policy language. *See* Compl. ¶¶ 231.b., n.-p.

None of these allegations raise a plausible inference of sex discrimination. Plaintiff pleads no facts like the plaintiffs in *Schwake* and *Regents* did, like those concerning potentially biased communications of a professor, administrators, or Title IX office staff. For instance, plaintiff makes no allegation like the plaintiff in *Schwake* that he faced the inferred personal bias of a professor touting the graphic details of the sexual misconduct to students before an appeal was even filed. Plaintiff makes no allegation like the allegation in *Schwake* of facing a Dean who allegedly negotiated a lesser sanctions outcome to avoid the public scrutiny of plaintiff's appeal, and plaintiff was not threatened with further discipline and sanctions were he to file a complaint against Roe, like in *Schwake*. And, plaintiff makes no allegation that a Title IX officer of OSU made inappropriately gender-based comments to him, like in *Regents*.

Page 20 -  Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

Plaintiff did not face a "one-sided investigation" like *Schwake* faced or "procedural irregularities" of the *Regents* plaintiff's proceeding. Whereas *Schwake* alleged that he was refused *any* written information about the charges against him and was found responsible for conduct violations of which he had not been informed were even being investigated, plaintiff does not allege that he faced such a one-sided ordeal. Similarly, unlike the *Regents* plaintiff who was not allowed to speak at the hearing and who was subjected to the investigator's findings of violations that were not included in the notice against him, plaintiff does not allege that he faced anything similar. On the contrary, plaintiff's allegations show that plaintiff had an opportunity to provide his perspective to the investigator and to review and respond to a written investigation report, *see* Compl. ¶¶ 173, 181, 183-84, the investigator interviewed some of plaintiff's suggested witnesses, *see* Compl. ¶ 175, and plaintiff was notified of the conduct violations for which he was found responsible, *see* Compl. ¶¶ 158-60.

Most significantly, none of plaintiff's allegations concerning his disciplinary process suggest any nefarious connection to his gender. Plaintiff's allegations do not show bias against him along with an "accumulation of procedural irregularities all disfavoring a male respondent [that] begins to look like a biased proceeding." *See Regents*, 2022 WL 98135, at *10. The crux of plaintiff's argument that he suffered discrimination is simply that the investigator found Roe's information credible and that he was ultimately found responsible for Non-Consensual Sexual Contact, Non-Consensual Sexual Intercourse, and Non-Consensual Sexual Activity. That plainly does not raise an inference of discrimination. Comparing this case to a Seventh Circuit case, *Doe v. Purdue University*, underscores this point; there, the court found sex discrimination plausible in part based on plaintiff's allegations that the investigator credited the

Page 21 -  Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

female complainant's story over the male plaintiff's despite that the investigator had never even spoken to the complainant. *See* 928 F3d 652, 669 (7th Cir 2019). Unlike *Purdue*, plaintiff does not allege anything close to those circumstances.

In short, other than conclusory statements, plaintiff fails to plead factual allegations necessary to sustain his Title IX claim: that gender bias against males motivated his disciplinary proceeding. As such, plaintiff's Title IX claim for gender bias should be dismissed as a matter of law.

**B.    Plaintiff's Section 1983 Procedural Due Process Claim Should Be Dismissed (Third Cause of Action).**

Plaintiff asserts a Section 1983 claim against the OSU Defendants, alleging that they deprived plaintiff of his liberty and property rights in violation of his procedural due process rights under the Fourteenth Amendment. Compl. ¶¶ 238-277. This claim fails against each OSU Defendant.

The Fourteenth Amendment provides that no State "shall . . . deprive any person of life, liberty, or property, without due process of law." US Const. amend. XIV, § 1. Actions for constitutional violations can be asserted under Section 1983, which provides, in pertinent part:

> "Every person who . . . causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

To establish a claim for Section 1983 liability, a plaintiff must show a "(1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by *a person* acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F3d 1128, 1138 (9th Cir 2012) (emphasis added)(internal punctuation and

Page 22 -  Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

citation omitted). To support a due process claim against an individual, a plaintiff must plausibly allege "the existence of (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process." *Shanks v. Dressel*, 540 F3d 1082, 1090 (9th Cir 2008) (internal punctuation and citation omitted).

### 1.    OSU is entitled to Eleventh Amendment immunity.

States have immunity from citizen lawsuits in federal court under the Eleventh Amendment. *See e.g.*, *Brainard v. Western Or. Univ.*, 2017 WL 1534191, at *2 (D Or Apr. 26, 2017). This immunity extends to "arm[s] of the state," which includes state universities and their officials. *See Liu v. Portland State Univ.*, No. 3:14-CV-00908-BR, 2016 WL 1228580, at *5 (D Or Mar. 28, 2016) (citing *Hagel v. Portland State Univ.*, 237 Fed App'x 146, 147 (9th Cir 2007)). By enacting Section 1983, Congress did not destroy sovereign immunity. *Will v. Mich. Dep't of State Police*, 491 US 58, 66, 109 S Ct 2304, 105 L Ed 2d 45 (1989).

A public university, such as OSU, is not a "person" under Section 1983 because it is an "arm of the state" for sovereign immunity purposes. *Id.* at 64; *and see Brainard*, 2017 WL 1534191 at *3 (citing *Hagel*, 237 Fed App'x at 147-48) (Ninth Circuit holding that Oregon public universities are arms of the state and thus immune from suit under Section 1983).

OSU is entitled to immunity from plaintiff's due process claim and it fails as a matter of law.

Page 23 -  Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

2.    **The Section 1983 claim against the OSU Individual Defendants fails as a matter of law.**

a.    **The OSU Individual Defendants are entitled to sovereign immunity to the extent the alleged liability is based on actions conducted in their official capacities.**

Plaintiff appears to assert Section 1983 liability concerning OSU Individual Defendants Kirkland, Johnson, and Feser, in their official capacities only, and to the extent that plaintiff is asserting liability against Millie in her official capacity, the same arguments apply to Millie. Plaintiff refers to actions taken in their "official capacity[ies] for oversight" of OSU disciplinary processes and seeks the requested "relief" based on the "joinder" of Kirkland, Johnson, and Feser in their "official capacity." *See* Compl. ¶¶ 266-71. Further, plaintiff appears to seek money damages from the OSU Individual Defendants. Compl. ¶ 277.

Plaintiff's Section 1983 claim for monetary damages against any Individual OSU Defendant acting in their official capacity fails as a matter of law because they are entitled to sovereign immunity. *See Hafer v. Melo*, 502 US 21, 25-27, 112 S Ct 358, 116 L Ed 2d 301 (1991) (lawsuits against state officials in their official capacities should be treated as suits against the state, and immunities available to the state apply to defendants acting in their official capacities) (quoting *Will*, *supra*, 941 US at 71 ("neither a State nor its officials acting in their official capacities are 'persons' under § 1983").

b.    **The due process claim asserted against the OSU Individual Defendants in their individual capacities fails.**

To the extent that plaintiff purports to hold any OSU Individual Defendant liable in their personal capacities under Section 1983, plaintiff's claim fails for two reasons: (1) plaintiff fails to state a claim against any individual, and (2) the individuals are entitled to qualified immunity as a matter of law.

Page 24 -  Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

(1)    *Plaintiff's allegations do not state a plausible procedural due process claim against any OSU Individual Defendant.*

Plaintiff fails to allege facts sufficient to state a claim against the OSU Individual Defendants in their personal capacities. Section 1983 only imposes liability upon individuals for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right." *Rizzo v. Goode*, 423 US 362, 370-71, 96 S Ct 598, 46 L Ed 2d 561 (1976). To survive a motion to dismiss on a Section 1983 claim, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F3d 1193, 1194 (9th Cir 1998) (dismissing plaintiff's Section 1983 claim under a statute analogous to Fed R Civ P 12(b)(6) for failure to allege facts showing defendants participated in the alleged violation). Section 1983 liability must be based on the personal involvement of the defendant. *Id.*

Plaintiff's allegations show that Kirkland, Feser, and Johnson[5] had no personal involvement in his disciplinary proceeding. Plaintiff alleged only that Kirkland, Feser, and Johnson allegedly have "oversight" of OSU disciplinary processes in their official capacities and that they "agreed to, approved, and ratified this unconstitutional conduct." Compl. ¶¶ 266-71, 274. But plaintiff alleges no facts reflecting personal participation in plaintiff's disciplinary proceedings that allegedly deprived plaintiff of his asserted constitutional interests.

Plaintiff's allegations about Millie reflect that she had some involvement, but do not reflect sufficient facts to plausibly state a due process claim against her in her individual capacity. Plaintiff alleged only that Millie notified plaintiff that he was found responsible for

---

[5] Johnson became Interim President in May 2021 after plaintiff's disciplinary process concluded.

Page 25 -  Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

violations of the Code of Student Conduct and that "[a]s a result of the findings of responsibility, Ms. Millie imposed a two-year suspension upon [plaintiff]." Compl. ¶¶ 189-90, 272. But plaintiff must allege more than simply that Millie did her job—a job that someone had to do—in order to sufficiently state a due process claim. Plaintiff must allege facts showing that Millie engaged in conduct which "'subject[ed], or cause[d] to be subjected,' [the plaintiff] to a deprivation of rights." *Rizzo*, 423 US at 370-71. Plaintiff has not done so; he did not plead facts showing how Millie personally participated in unconstitutional conduct.

Therefore, plaintiff's Section 1983 due process claims against Kirkland, Feser, Johnson, and Millie fail as a matter of law.

(2)    *The OSU Individual Defendants are nevertheless entitled to qualified immunity.*

Additionally, the OSU Individual Defendants are entitled to qualified immunity from plaintiff's due process claim. Public officials are entitled to qualified immunity unless the official has violated a statutory or constitutional right that was "'clearly established' at the time of the [official's alleged] conduct." *Ashcroft v. al-Kidd*, 563 US 731, 735, 131 S Ct 2074, 179 L Ed 2d 1149 (2011) (quoting *Harlow v. Fitzgerald*, 457 US 800, 818, 102 S Ct 2727, 73 L Ed 2d 396 (1982)). A right is clearly established only when "the contours of [that] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 563 US at 741 (internal punctuation and citation omitted). The "existing precedent must have placed the * * * constitutional question beyond debate." *Id*. The Ninth Circuit "first look[s] to [its own binding precedent" to determine whether the right was clearly established. *Chappell v. Mandeville*, 706 F3d 1052, 1056 (9th Cir 2013). "The right must be settled law, meaning that it must be clearly established by controlling authority or a robust

Page 26 -  Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

consensus of cases of persuasive authority." *Tuuamalemalo v. Greene*, 946 F3d 471, 477 (9th Cir

2019) (quoting *Dist. of Columbia v. Wesby*, __ US __, 138 S Ct 577, 590-91, 199 L Ed 2d 453

(2018).

When the doctrine of qualified immunity is properly applied, it "protects all but

the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 563 US at 743

(quoting *Malley v. Briggs*, 475 US 335, 341, 106 S Ct 1092, 89 L Ed 2d 271 (1986)). Indeed,

"whether an official protected by qualified immunity may be held personally liable for an

allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the

action." *Anderson v. Creighton*, 483 US 635, 639, 107 S Ct 3034, 97 L Ed 2d 523

(1987) (quoting *Harlow* 457 US at 819).

Plaintiff cannot overcome the OSU Individual Defendants' qualified immunity at

either prong of the analysis.

(A)    <u>Plaintiff does not allege a clearly established right</u>.

Plaintiff's asserted constitutional rights were not clearly established rights as of

the time that the events giving rise to this claim occurred (plaintiff's disciplinary proceeding and

suspension from OSU, from about February to October 2020). Plaintiff purportedly asserts two

constitutional rights: (1) a property interest in continued enrollment at OSU for the period that

plaintiff had paid tuition, and (2) a liberty interest in his "good name, reputation, honor, and

integrity." *See* Compl. ¶¶ 242, 244, 253.

The right to higher education or continued enrollment for the period of paid

tuition was not a clearly established property right in this jurisdiction during the relevant time

period. *See, e.g.*, *Doe v. Univ. of Or.*, No. 6:17-cv-01103-AA, 2018 WL 1474531, at *12-14

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

(D Or Mar. 26, 2018) (granting qualified immunity to university officials who suspended student because there is no clearly established property right to higher education in Oregon or in the Ninth Circuit); *Austin v. Univ. of Or.*, 205 F Supp 3d 1214, 1222 (D Or 2016) (same), *aff'd*, 925 F3d 1133, *supra*, (9th Cir 2019); *Andrews v. Treasure Valley Community Coll.*, No. 2:19-cv-01314-SU, 2020 WL 1678050, at \*5 (D Or Mar. 18, 2020) (granting qualified immunity to college official who dismissed student because there is no clearly established property right to higher education).

As to the alleged liberty interest in a plaintiff's reputation, plaintiff has failed to state sufficient facts to allege a protected liberty interest concerning his reputation at all, let alone a clearly established one.[6] An alleged injury to one's reputation standing alone "is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law." *Wenger v. Monroe*, 282 F3d 1068, 1074 (9th Cir 2002) (punctuation omitted) (quoting *Paul v. Davis,* 424 US 693, 712, 96 S Ct 1155, 47 L Ed 2d 405 (1976).

Plaintiff alleges that his protected liberty interest exists under the "stigma-plus" test. Compl. ¶¶ 243-45. Under that test, a plaintiff may have a protected liberty interest if they are able to show that the "public disclosure of a stigmatizing statement by the government, the accuracy of which is contested, *plus* the denial of some more tangible interest[] such as employment, or the alteration of a right or status recognized by state law." *Ulrich v. City and Cnty. of San Francisco*, 308 F3d 968, 982 (9th Cir 2002) (citations omitted). Plaintiff's

---

[6] Since plaintiff's alleged liberty interest to his reputation is not a protected constitutional right, this claim fails as to this alleged right regardless of the other arguments in this Section. *See Shanks*, *supra*, 540 F3d at 1090 (internal punctuation and citation omitted) (plaintiff must plausibly allege *inter alia* "the existence of a . . . liberty or property interest protected by the Constitution" to state a due process claim).

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

complaint fails to satisfy the stigma-plus test because he does not allege publication of a

stigmatizing statement by an OSU official about his suspension. The Ninth Circuit found in an

unpublished case under similar circumstances to this case, that a plaintiff failed to satisfy the

stigma-plus test. *See Doe v. White*, 859 Fed App'x 76, 78-79 (9th Cir June 1, 2021)

(unpublished) (dismissing student's claim who had been suspended for fourteen months due to a

sexual misconduct investigation and alleged that she suffered reputational harm to her education

and career). Therefore, plaintiff's circumstances do not satisfy the stigma-plus test and he fails to

show that he had a constitutionally protected liberty interest.

   Moreover, for purposes of qualified immunity, plaintiff's alleged harm is far too

ambiguous to support an argument that the "constitutional question [is] beyond debate." *al-Kidd*,

563 US at 741. The right to be free from reputational stigma based on suspension from an

institution of higher education was not a clearly established right in this jurisdiction during the

relevant time period. *See e.g.*, *White*, 859 Fed App'x at 78-79 (granting qualified immunity to

university official because there is no clearly established right to one's reputation); *Krainski v.

Nevada ex rel. Bd. of Regents of Nevada System of Higher Educ.*, 616 F3d 963, 971 (9th Cir

2010) (granting qualified immunity to university officials concerning student found responsible

for conduct violations because there was no clearly established right to one's reputation). The

alleged harm is too uncertain to be said to be clearly established such that "*every* reasonable

official would have understood that what he is doing violates that right." *al-Kidd*, 563 US at 741.

   Neither alleged right plaintiff proposed is "settled law" or dictated by "controlling

authority." Therefore, neither right is clearly established.

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

(B)    <u>Plaintiff does not allege knowingly unlawful conduct</u>.

Plaintiff also cannot satisfy the second prong of qualified immunity analysis as the allegations do not plausibly suggest that the OSU Individual Defendants "knowingly violate[d] the law" or that they were "plainly incompetent." As explained in Section III.B.2.b.1., plaintiff's allegations do not suggest that any of the individuals' personal conduct caused plaintiff's alleged deprivation of a clearly established constitutional right. Even as to Millie, who had some involvement, plaintiff does not—and cannot—assert facts that suggest that Millie intentionally abridged plaintiff's constitutional rights. Without alleging specific facts demonstrating an intentional or knowing legal violation in plaintiff's disciplinary proceeding, it is difficult to imagine how any of the OSU Individual Defendants acted unreasonably in their conduct or that they "understood that what [they were] doing violates [plaintiff's rights.]" *al-Kidd*, 563 US at 741.

This court should grant qualified immunity to the OSU Individual Defendants and, in addition to the other reasons asserted, dismiss this claim in its entirety as a matter of law.

**C.    Plaintiff's Breach of Contract Claim Should Be Dismissed (Fourth Cause of Action).**

Plaintiff's fourth claim should be dismissed because plaintiff does not plead facts that reflect a breach-of-contract claim in Oregon. Plaintiff's personal "expectation" does not show mutual assent to be bound by a contract, which Oregon law requires to state a breach-of-contract claim. Moreover, plaintiff failed to allege facts that show OSU breached any alleged contract.

Page 30 -  Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

1.      **Plaintiff fails to properly plead the existence of a contract.**

To establish a breach-of-contract claim, plaintiff must plausibly allege (1) the

existence of a contract, (2) the relevant terms the contract, (3) the plaintiff's full performance

and lack of breach, and (4) the defendant's breach resulting in damage to the plaintiff. *Slover v.*

*Or. State Bd. of Clinical Soc. Workers*, 144 Or App 565, 570, 927 P2d 1098 (1996). The

"determination whether a contract was formed * * * is a question of law." *Real Estate Loan*

*Fund Or. Ltd. v. Hevner*, 76 Or App 349, 355, 709 P2d 727 (1985) (citations omitted). A

"contract is most commonly formed by an offer, an acceptance of that offer, and an exchange of

consideration," and the parties must manifest mutual assent to the offer and acceptance. *Wieck v.*

*Hostetter*, 274 Or App 457, 471, 362 P3d 254 (2015) (citation omitted). A plaintiff must allege

facts showing that the defendant's "communications and overt acts suggest it manifested intent

to be bound by the statements and policies in its written documents." *Gallagher v. Capella Educ.*

*Co.*, No. 3:19-cv-01342-JR, 2019 WL 8333532, at *5 (D Or Dec. 23, 2019) (internal punctuation

and citation omitted), *adopted by* 2020 WL 1550729 (D Or Apr. 1, 2020), *aff'd* 2021 WL

6067015 (9th Cir 2021). In other words, "the plaintiff must pinpoint 'an identifiable contractual

promise that the defendant failed to honor.'" *Id.* (internal punctuation and citation omitted).

A university can be contractually bound to its students if it makes "'individualized

agreement[s]' to provide specific services to particular students." *Gibson v. Walden Univ., LLC*,

66 F Supp 3d 1322, 1324 (D Or 2014) (quoting *Bird v. Lewis & Clark Coll.*, 104 F Supp 2d

1271, 1277 (D Or 2000) (finding a contract was created as to college's specific discussions and

agreement with the plaintiff about accommodations for an overseas program). In other

circumstances, a contract may be created if its handbook or other publications "includ[e] an

Page 31 -  Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

'Agreement Contract,' which require[s] the student to read, sign, and abide by the guidelines

contained within the handbook." *Gibson*, 66 F Supp 3d at 1325 (citing *Dauven v. George Fox*

*Univ.*, 2010 WL 6089077, at *17 (D Or 2010)). Alleged promises contained in a "generally

applicable student handbook" and similar publications of a university, such as its policies, absent

some individualized agreement with a particular student, are not enforceable as contracts under

Oregon law. *See Gibson,* 66 F Supp 3d at 1324-25.

Plaintiff alleged that the contract arose from his application for admission,

enrollment, and tuition paid to OSU with the "expectation that OSU would implement and

enforce the provision and policies set forth in its official publications including the [Code of

Student Conduct, University Policy 05-001 Sexual Misconduct and Discrimination, and the

Sexual Misconduct and Discrimination Investigation and Resolution Process for Complaints

against Students]."[7] Compl. ¶ 279. But plaintiff has not alleged the existence of a contract

because he does not allege that the publications were part of the offer and acceptance for which

there was consideration. Plaintiff's alleged contract lacks the fundamental tenets of a contract by

---

[7] A court "may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F3d 445, 448 (9th Cir 2006). "The court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Id.* (citation omitted); *see also Dr. Eric Natkin, DO PC v. Am. Osteopathic Ass'n*, No. 3:16-cv-01494-SB, 2017 WL 9049880, at *5 (D Or Aug. 30, 2017) (applying incorporation by reference doctrine to consider contents of contract on motion to dismiss). Plaintiff incorporated by reference three of OSU's publications by citing several statements from the publications. The publications are central to his alleged contract claim and no party questions the authenticity of the publications. The Court may therefore consider the contents of the publications as true for purposes of this motion. Attached as Exhibit 1 to the Declaration of Becky Bangs are copies of OSU's Code of Student Conduct, University Policy 05-001 Sexual Misconduct and Discrimination, and the Sexual Misconduct and Discrimination Investigation and Resolution Process for Complaints against Students.

Page 32 -  Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

which both parties objectively manifested intent to be bound. In fact, the Code of Student

Conduct expressly provides that OSU can make unilateral changes: "Oregon State University

reserves the right to make changes to this Code as necessary. Once those changes are posted

online, they are in effect." *See* Declaration of Becky Bangs in Support of Motion to Dismiss

("Bangs Decl."), ¶ 3, Ex. 1 at 3. No offer and acceptance can occur if OSU can unilaterally

change its policy without warning, and it certainly does not reflect an objective manifestation of

assent to be bound by a particular publication. To the contrary, OSU's generally applicable

publications and information for its community provide students an awareness of what conduct is

impermissible and what its processes are concerning those matters—that is not the crystalized

offer and acceptance that creates a binding contract.

Some federal district court rulings have allowed breach-of-contract theories

beyond the motion to dismiss stage to proceed based on certain university publications, but those

rulings have critical differences. *See e.g.*, *Pranger v. Or. State Univ.*, 3:21-cv-0656-HZ,

2022 WL 214629, at *6 (D Or Jan. 25, 2022); *Doe v. Univ. of Or.*, *supra*, 2018 WL 1474531,

at *17-18. In *Pranger*, the court found that tuition allegedly paid for in-person classes could in

theory reflect a breach-of-contract.[8] The *Pranger* court recognized that mutual assent is required

for contract formation and, as of this filing, is permitting a claim to proceed beyond a motion to

dismiss on the premise that the complaint asserted mutual assent for in-person instruction before

pandemic restrictions arose. *See* 2022 WL 214629, at *5-6. Here, plaintiff only pleads an

"expectation" about publications that he does not suggest he read or considered as part of the

reason he attended OSU, nor does OSU believe he can. As indicated above, the Code of Student

---

[8] OSU is exploring avenues for appeal or reconsideration of this recent ruling.

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

Conduct states that it may change, and as plaintiff alleges, university Title IX policies are subject to regular change based on the DOE's evolving guidance and regulations. *See* Compl.¶¶ 39-41 (acknowledging that in 2017, DOE rescinded prior guidance and issued "interim guidance"); *and see* 34 CFR §§ 106.1, *et seq.* (2020).

Similarly, in *Doe*, the court found that it could not determine whether there was mutual assent to be bound by a particular university publication. *Doe*, 2018 WL 1474531, at *18. The question here is whether this Complaint states a breach-of-contract claim based on a formed contract, and it does not. Instead, plaintiff alleges that he "expect[ed]" that the Code of Student Conduct and OSU's Title IX policies would be implemented, not that he and OSU engaged in an individualized agreement and mutually assented that OSU would be bound by them. *See* Compl. ¶ 279.

In sum, while some contract claims against universities relate to the broad range of publications, the framework of those cases stems from claims in which academic decisions are challenged and courts loosely find the relationship between a student and institution to be "contractual *in nature*." *Ross v. Creighton Univ.*, 957 F2d 410, 416 (7th Cir 1992)(emphasis added); *Gallagher*, *supra*, 2019 WL 8333532, at *4. But that general concept does not fit in this case. Plaintiff must allege facts showing a plausible claim that meets the requirements of Oregon law, including showing mutual assent that OSU would be contractually bound by a particular policy, but plaintiff did not. *See Wieck*, 274 Or App at 471 (contract formation requires mutual assent). To be sure, plaintiff cannot simply point to any written material OSU has publicized for its students and call it a legally enforceable "contract" without allegations showing the formation and existence of a contract beyond alleging simply that plaintiff paid tuition and that he

Page 34 -  Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

"expect[ed] that OSU would implement" the publications he references. Compl. ¶ 279. This would mean that any written material OSU has published anywhere could be a legally enforceable contract the entire time a student attends OSU if any given student "expected" unilaterally for OSU to be bound by it. That simply does not reflect contract law.

In short, the breach-of-contract claim should be dismissed because plaintiff fails to allege facts showing the existence of a contract concerning OSU's generally applicable publications, as necessary under Oregon law.

**2.    Plaintiff fails to allege a plausible breach of the alleged contract.**

Even if plaintiff had alleged the existence of a contract—and he has not— plaintiff's Complaint fails to plead facts sufficient to support a claim that OSU breached any alleged contractual obligations. Plaintiff alleges that OSU "committed several breaches of their agreements with Plaintiff during the investigation process." Compl. ¶ 284. Specifically, plaintiff alleges four breaches: (1) OSU allegedly failed to conduct a thorough, fair, and impartial investigation; (2) OSU allegedly failed to correctly apply the relevant standard of review; (3) OSU allegedly breached its obligation to presume plaintiff innocent and assign the burden of proof to OSU; and (4) OSU allegedly failed to promptly resolve the matter.

First, as to plaintiff's complaint that OSU failed to conduct a thorough, fair, and impartial investigation, he again alleges perceived errors in his disciplinary process that he believes led to an incorrect outcome. For example, plaintiff states facts about Roe's alleged "consent[]," that OSU did not interview certain witnesses, and others. *See* Compl. ¶¶ 287-296. But plaintiff's assertions do not plausibly suggest that OSU's disciplinary proceeding was not "impartial" simply because plaintiff did not agree with the outcome. Plaintiff's disagreement

Page 35 -  Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

with the outcome does not suggest that the proceeding was biased, but even more importantly concerning his contract claim, his disagreement with the outcome fails to plausibly suggest that OSU breached an alleged contract with plaintiff.

As to the investigation's thoroughness, plaintiff's allegations underscore that it was thorough: the investigator met with several witnesses, including plaintiff and witnesses that he suggested, and obtained plaintiff's response to her investigation report. *See* Compl. ¶¶ 173, 175, 178-79, 183-84. None of plaintiff's allegations suggest that the investigation was not thorough, only that he did not like its outcome. Any student could survive a motion to dismiss by claiming an investigation is not "thorough" because something "more" can always be done—that does not mean an investigation is not thorough.

Finally, plaintiff inexplicably alleges throughout his Complaint, and as evidence of an alleged breach of contract, that OSU did not consider his "lie detector examination results." Compl. ¶ 287. But plaintiff admits that OSU's Sexual Misconduct and Discrimination Investigation and Resolution Process for Complaints against Students indicates that it generally does not consider polygraphs. *See* Compl. ¶ 172; *and see* Bangs Decl. ¶ 3, Ex. 1 at 66. Therefore, it is unclear how OSU's consistency with its policy could be a breach of contract.

In short, plaintiff fails to allege a breach concerning the fairness of OSU's investigation.

Second, concerning plaintiff's complaint that OSU breached the "contract" by applying an incorrect standard of review to his disciplinary process, he alleges similar facts about perceived errors in the process. Again, that plaintiff did not agree with the outcome of his proceeding does not suggest that OSU failed to apply the preponderance of the evidence

Page 36 -  Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

standard. It simply suggests that when plaintiff was found responsible for nonconsensual sexual interactions, the adjudicator believed that, by a preponderance of the evidence, plaintiff committed those acts. Plaintiff fails to allege a breach concerning the standard of review.

Third, plaintiff complains about the presumption of innocence and the assignment of the burden of proof, but he does not plead a breach. Plaintiff admits that no OSU policy "specifically addresses the presumption of innocence, or which party is assigned the burden of proof." Compl. ¶ 303. In fact, the Sexual Misconduct and Discrimination Investigation and Resolution Process for Complaints against Students indicates that responding parties are "presumed to be not responsible unless and until the investigation has concluded and there is a preponderance of the evidence that a Policy and/or Code violation has occurred." Bangs Decl. ¶ 3, Ex. 1 at 63. Nevertheless, plaintiff vaguely alleges that OSU breached an implied covenant of "good faith and fair dealing" by not affording him that presumption. Compl. ¶¶ 303-04. The duty of good faith and fair dealing implies only that a party will act in "good faith in its performance and enforcement" of the contract. *See Klamath Off-Project Water Users, Inc. v. Pacificorp*, 237 Or App 434, 445, 240 P3d 94 (2010). But pointing to that implied covenant does not somehow mean that plaintiff was presumed guilty, and the implied covenant would not assign a burden of proof in a student disciplinary proceeding. Plaintiff fails to allege specific facts supporting the conclusions that OSU did not afford plaintiff the presumption of innocence and bear the burden of proof. Therefore, plaintiff has not alleged a breach.

Finally, plaintiff complains about the promptness of the investigation. Plaintiff alleges that the investigation and process was "nearly one year." Compl. ¶ 309. And yet, plaintiff admits that the Sexual Misconduct and Discrimination Investigation and Resolution Process for

Page 37 -  Oregon State University Defendants' Motion to Dismiss

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

Complaints against Students states that OSU "will *attempt* to resolve all complaints as promptly *as possible*. . . ." Compl. ¶ 308 (emphasis added). Nothing suggests that OSU did not attempt to resolve the matter promptly, or that one year is not as prompt as was possible given that the policy also states that it will do so "consistent with the need to conduct sensitive and informed fact-gathering to ensure an equitable resolution." Compl. ¶ 308; Bangs Decl. ¶ 3, Ex. 1 at 51. Plaintiff has not alleged a breach.

In short, plaintiff failed to allege facts showing the elements of a breach-of-contract claim. His factual allegations fail to plausibly suggest the formation of a contract because he does not allege an individualized agreement reflecting mutual assent between he and OSU, and his mere "expectation" that OSU would enforce its policies is not an enforceable contract. Regardless, plaintiff failed to plausibly allege any breach of the alleged contract's obligations. Plaintiff's breach-of-contract claim fails.

## IV.    CONCLUSION

Plaintiff's Complaint fails to state a claim. Neither of plaintiff's Title IX theories plausibly suggest that the OSU Defendants undertook plaintiff's disciplinary proceeding because of gender bias. Plaintiff's claims are based on mere conclusory allegations of federal guidance encouraging education institutions to take sexual misconduct seriously and assertions about his own disciplinary proceeding that suggest nothing more than plaintiff's own disagreement with its outcome, rather than an unlawful discriminatory motivation. Furthermore, plaintiff's due process claim fails as a matter of law because OSU is entitled to Eleventh Amendment immunity and the OSU Individual Defendants—to the extent that plaintiff is asserting a due process claim against them in their individual capacities—are entitled to qualified immunity from his claim. Finally,

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

plaintiff's breach-of-contract claim fails because he did not plead the existence of a contract or the breach of its terms.

In conclusion, plaintiff's Complaint should be dismissed in its entirety with prejudice as to the OSU Defendants.

DATED this 3rd day of February, 2022.

MILLER NASH LLP

s/*Michael Porter*

Michael Porter, P.C., OSB No. 003560
mike.porter@millernash.com
Erin M. Burris, OSB No. 155379
erin.burris@millernash.com
Phone: 503.224.5858
Fax: 503.224.0155

Attorneys for Defendants Oregon State University,
Board of Trustees of Oregon State University, Kim
Kirkland, Carol Millie, Rebecca Johnson, and
Edward Feser

4875-6113-9979.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204